*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0082**

State of Minnesota,
Respondent,

vs.

Jeremy Paul Haas,
Appellant.

**Filed September 22, 2014
Affirmed
Ross, Judge**

Goodhue County District Court
File No. 25-CR-13-1760

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Stephen N. Betcher, Goodhue County Attorney, Christopher Schrader, Assistant County Attorney, Red Wing, Minnesota (for respondent)

Hillary B. Parsons, Joseph P. Tamburino, Caplan Law Firm, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Ross, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

The district court convicted Jeremy Haas of fifth-degree domestic assault after eyewitness testimony convinced a jury that witnesses saw him strike his wife inside the

couple's car despite his wife's consistent denial that he hit her. Because weighing evidence and assessing witness credibility are duties we leave to the jury and the disputed trial evidence can reasonably support the jury's finding, we affirm the conviction over Haas's argument that the evidence is insufficient.

## FACTS

Red Wing police charged Jeremy Haas with fifth-degree domestic assault after they investigated reports that he hit his wife while they were seated in a car on a July 2013 afternoon. Megan Rowan and her boyfriend John Steinhauer saw the incident from Rowan's home and called the police. An officer interviewed Rowan and two other witnesses, nine- and ten-year-old sisters who also lived on that street. A jury heard the following testimony at Haas's trial.

Rowan testified that she lives on the street where the incident occurred. She was watching for a visitor out the entryway when she noticed a green Camaro stop abruptly in front of her house. A man was in the driver's seat and a woman sat beside him. Rowan heard yelling from inside the car, and then she saw the man hit the woman, causing her head to carom out the open passenger window. Rowan described the blow as a punch, and she identified Haas as the driver. She said that the woman then left the car and ran away, and the driver yelled after her. The woman disappeared between some houses. The car drove off but soon returned. The woman also returned a few minutes later, "crying hysterically." Rowan asked the woman if she was alright. She said yes and told Rowan that she would walk to her grandfather's house nearby.

Steinhauer mostly corroborated Rowan's testimony. He said he was leaving Rowan's house to smoke outside when he saw the Camaro arrive. He saw the man's hand rise toward the woman and the woman's head jerk out the window. He could not see directly into the car, so he could not see the point of the alleged contact. But he inferred from what he saw that the man had struck the woman on the side of her head. His testimony differed slightly from Rowan's in that he said that Rowan was already outside the house when the car arrived, not in the entryway. Steinhauer called police but gave no statement when they arrived.

The two sisters also testified. Their accounts mostly mirrored each other. Nine-year-old Savannah and ten-year-old Sierra were playing tag outside their house when the Camaro suddenly stopped, drawing their attention. Both girls said they saw through the car's rear window that the man who was driving hit the woman sitting next to him. They saw the woman leave the car crying. Savannah, but not Sierra, said that the woman also hit the man.

Haas's wife also testified. She said she was in the car with her husband. Although she insisted they were not arguing, she contradicted herself by explaining that they were in a disagreement over a civil case they were contesting and that, in the heat of the moment, she had put the car in park, removed the key, and exited. She said that Haas did not follow her but came back to get the key she had taken. She acknowledged that she was crying, but she denied that Haas hit her or that any physical altercation took place. She explained that her face had appeared red because she had been in the sun, not because of an assault.

Red Wing police officer Kyley Lindholm also testified. She had responded to the call and investigated. She did not interview Steinhauer because Rowan told her that Steinhauer had not seen anything. She said that she met with Haas's wife but did not notice any bruising or other physical signs of an assault. She had interviewed Rowan and recorded the discussion, and the jury listened to the recording. In the recording, Rowan said that the man "must have hit [the woman] pretty hard." Haas did not testify.

The jury convicted Haas of fifth-degree domestic assault. Haas appeals.

## D E C I S I O N

Haas argues that the state did not introduce sufficient evidence to support his misdemeanor domestic assault conviction. The substantive elements of that offense are that the defendant intentionally inflicted or attempted to inflict bodily harm on the victim and the victim was a member of the defendant's family or household. Minn. Stat. § 609.2242, subd. 1(2) (2012). We review those aspects of Haas's sufficiency-of-the-evidence challenge that do not depend on circumstantial evidence by scrutinizing the record and deciding whether the evidence was sufficient for the jurors to reach their verdict. *State v. Heiges*, 806 N.W.2d 1, 17 (Minn. 2011). We view all evidence in the light most favorable to the conviction and assume that the jury believed the testimony of the state's witnesses and disbelieved all contrary evidence. *Id.* The jury is best positioned to weigh the credibility of witnesses, *State v. Thao*, 649 N.W.2d 414, 421 (Minn. 2002), and it is exclusively tasked with resolving conflicting testimony. *State v. Bliss*, 457 N.W.2d 385, 391 (Minn. 1990).

4

Haas contends that his conviction relied heavily on circumstantial evidence. But he mischaracterizes the distinction between direct and circumstantial evidence. Direct evidence is evidence "based on personal knowledge or observation and that, if true, proves a fact without inference or presumption," while circumstantial evidence is "based on inference and not on personal knowledge or observation." *State v. Silvernail*, 831 N.W.2d 594, 604 (Minn. 2013) (Stras, J., concurring) (quotations omitted). All the witnesses testified about events they observed, and at least two witnesses testified that they saw Haas strike his wife, not merely that they saw activity from which they inferred that he struck her. This means the jury received direct evidence (and corroborating circumstantial evidence) that Haas struck his wife. The only aspect of the state's case that relied entirely on circumstantial evidence was Haas's intent. But Haas argues only that the evidence is insufficient to show that he delivered the blow, not that it is insufficient to prove his intent. We therefore consider only whether the evidence supports the physical element of the crime.

Haas highlights the perceived unreliability of each witness and points out the lack of physical evidence. His arguments might convince a fact finder that he did not assault his wife, but we do not sit as a fact-finding body. His arguments cannot overcome our deference to the jury's decisions on witness credibility or its conclusions resolving conflicting testimony. He emphasizes that Rowan admitted on cross-examination that she did not actually see a strike and that Steinhauer also did not see a strike. But the two girls did testify unambiguously that they saw Haas hit his wife. He calls our attention to their youth and maintains that they were too young for him to test their testimony with

5

rigorous cross-examination. He also insists that all the witnesses had poor lines of sight into the car and that inconsistencies peppered their testimony. These are sound arguments that might have convinced a jury that the witnesses only erroneously testified that they saw him hit his wife or mistakenly inferred that he hit her. But these arguments did not convince the jury. And they are not arguments on which we can disregard our customary deference to the jury as fact finder and second-guess its judgment. Despite Haas's reasonable arguments, viewed in the light most favorable to the conviction, the conflicting evidence is sufficient to support the jury's finding that Haas struck his wife.

**Affirmed.**